### McCLEAR v. McCAIN.

MECHANICS' LIENS—STATEMENT UNDER OATH—SUFFICIENCY.
A bill to foreclose a mechanic's lien may not be sustained where the only affidavit made by plaintiff and mailed to defendant, at the latter's demand, was not a compliance with 3 Comp. Laws 1915, § 14799, requiring the statement under oath to give the number and name of every subcontractor or laborer and every person furnishing materials, and the amounts, if any, due them, or with section 14803, requiring each person claiming a lien to furnish, within 5 days after demand by the owner, a statement of the amount of work and materials furnished to date of statement, and those unpaid, as nearly as can be ascertained.

Appeal from Livingston; Collins (Joseph H.), J. Submitted January 17, 1924. (Docket No. 88.) Decided July 24, 1924.

Bill by T. P. McClear against Frederick E. McCain and another to foreclose a mechanic's lien. Defendants filed a cross-bill to establish a counterclaim for noncompletion of the contract. From a decree for plaintiff, defendants appeal. Reversed and bill and cross-bill dismissed.

*Frederick E. McCain, in pro. per.*

STEERE, J. This suit was brought to enforce a lien for labor performed and material furnished in the construction for defendants of a summer cottage in Livingston county on a lot in a platting called "River Bend Willow's subdivision." Defendants answered in denial with a counterclaim by cross-bill for failure of plaintiff to fully perform his contract and expense

incurred by them in correcting claimed defective work and completing what he left undone. The contract entered into between the parties was oral. The contract price was $1,100, but their testimony as to what was contracted for is at marked variance. It is undisputed that defendants paid plaintiff $700 on the contract. The defense for refusing further payment was and is that plaintiff failed to complete the building and much of the work he did was defective or not according to the contract, resulting in its costing them, including the amount paid plaintiff, much more than the contract price to finish the cottage as contracted for so near as was possible in the condition he left it. Defendants also urged as a defense under the lien law that plaintiff failed to furnish an itemized statement in accordance with the requirements of section 14803, 3 Comp. Laws 1915; failed to furnish a contractor's sworn statement as provided for in section 14799; and that he failed to file his lien within the 60-day period provided in section 14800.

The contract was entered into either in July or August, 1921. McClear testified he took the contract in July, his sworn bill of complaint states about August 1st and his claim of lien about August 15th; while McCain testified that it was August 30th and the contract was to be finished in a month. McClear testified:

"It took me about 30 days to build this house. As to when I began, when they got the material. I could not tell the date. I took the contract some time in July and we finished the screens along in January. That is four months. I was not at the building all the time."

When the contract was entered into McCain had a blueprint of the proposed cottage, which he testified was drawn to fit the bargain after eliminating various much more elaborate things which had been proposed, in order to get the price down to the amount agreed

upon. The walls were to be built of large hollow tele- phone conduit tile which McCain furnished on the ground. There were 400 of them which he stated cost him 50 cents each and there were 94 of them left. These he claimed should have been used as the outer walls visible above the ground were to be tile, while the cement foundation was carried too high and much of it exposed to view. McClear was to furnish the rest of the material and do the work. He testified that the blueprint McCain produced was the one they negotiated with reference to, but as proposed in the plans it would cost several hundred dollars more to build it than McCain was willing to pay, saying he did not want to pay over $1,000 and urged that work and material be omitted and the price be cut down to that amount, so they went over the blueprint agree- ing on the various eliminations and use of cheaper material or methods, until they finally agreed upon a price of $1,100, of which he testified:

"I was to build the wall, put the floor down, set the partitions and seal it on one side, ceiling partition, hang the doors, no casings, not any casing inside in any way, no base, and put a roof on something like Dr. Fisher's, build a stoop in front, and I agreed to make the screens, I didn't agree to put them on, put a cement floor in, and I think you will find that is all there. I was to furnish the windows and the glass in them."

To that extent he stated he built it "according to this blueprint," but when confronted with important variations and omissions according to the blueprint he testified that McCain directed or consented to them, which the latter denied. He produced no witnesses beside himself to substantiate his claims and his testi- mony is self-contradictory in important particulars both as to what was agreed upon and what was done. He testified that the plans "consisted of the blueprint and nothing else," and said he had the original and

would produce it, but failed to do so. Shown a blue-print which McCain later testified was a duplicate, he said "just like that. The same number of windows, but I thought—otherwise it is all right." When shown a letter from McCain received after their agreement stating the eliminations agreed upon he materially modified his previous testimony.

Neither produced other witnesses as to their agreement, but McCain had two witnesses who supported his own testimony as to the quality of work done on the cottage and unfinished condition in which it was left, one a staff photographer for the Detroit Times who had previously followed the mason trade for ten years and the other a carpenter and builder who had been employed by McCain to correct claimed defects in construction and finish the cottage. They testified to poor and imperfect construction. Some of the particulars are as follows: The joints between the tile were not properly filled, leaving open joints, the rafters were not properly braced so that the roof had sagged in places six inches or more and leaked, the floor joists were merely butted and toe-nailed against the main cross-beam instead of resting upon it, there was no finish around the edge of the floor next to the tile and one could see down through, there was no casing around the doors or windows and daylight showed between the jambs and walls, the door and window lintels were made of wood and not strong enough to safely support the tile wall over them so that some had settled in the center and cracked. The windows were fastened in by nails and no moulding or other provision was made for putting on screens. The beaver board was only tacked up with small nails without strips for support and had sagged out of place, part having fallen on the floor; there were no steps to the side door, or porch, which was open at the front and unfinished; with other details of poor and un-

finished work which, if true, fully sustained defendants' claim of incomplete and faulty construction.

Plaintiff's claim of lien was filed February 11, 1922, and was for $457. It states performance of the contract was begun "on or about the 15th of August, 1921, and the last of such labor performed and the last of the material furnished therefor on the 16th day of December, 1921." The trial court rejected his claim for certain extras and awarded a lien for $370.

McCain testified the contract was to be finished within a month after it was entered into, in time for the woodwork to be painted before bad weather set in, and no work was actually done on the building itself after October. Plaintiff testified that it took him about 30 days to build it, and "the building was practically completed in October, all except the screens," which he "finished along in January." He makes no claim of any other work on or in connection with the building after October, except to make the screens which he did not put on the building but left there, claiming he did not agree to put them on. McCain's testimony is that plaintiff's contract included screening all windows and doors, which was not done; that the screens plaintiff left at the building after he quit there in October were not sufficient in number, poorly made and not put on the building. McCain did, however, have his carpenter finish them up, and used them in screening the cottage. Had he not used them his contention that the claim of lien was not filed within the 60 days' limit might be worthy of consideration. Whether McClear's last work on them was done "on the 16th day of December, 1921," or "along in January," to both of which he makes oath, he built and furnished them for the building within the 60 days. They were used by McCain and became a part of it.

McCain testified that when he made payments to plaintiff on the contract he demanded or asked of him a contractor's statement, as provided for in section 14799, 3 Comp. Laws 1915, which the latter promised to furnish but never did.   Plaintiff denied that any such request was ever made of him until "away along in January," when he tried to get a settlement after fixing the screens.   He also testified that he received notice from McCain that the building was not completed according to contract and if he did not do so it would be done at his expense.   He said he did not remember the date of the notice but that "immediately afterwards I filed the lien."

The only affidavit on that subject that plaintiff is shown to have ever made was mailed to defendant on January 17, 1922.   It reads as follows:

"T. P. McClear being duly sworn, deposes and says that he is the original contractor for the erection of the cottage for Mr. Frederick E. McCain, located at Hamburg, Livingston county, Michigan, in Van Antwerp's subdivision and that all bills for material used in the erection of said house have been paid and that all laborers or persons in the employ of T. P. McClear have been paid in full to date.

"T. P. McCLEAR.

"Subscribed and sworn to before me this 17th day of January, 1922.

"ANNA E. McCLEAR,
"Notary Public, Wayne County, Mich."

This affidavit fails to meet essential prerequisites for a lien found in both sections 14799 and 14803, 3 Comp. Laws 1915.   The statement under oath required by section 14799 calls for the number and names of every subcontractor or laborer and every person furnishing materials, and the amounts if any due them; and says that until such statement is made "in manner and form as herein provided, the contractor shall have no right of action or lien against the owner," etc.; while section 14803 requires each person claiming a lien to

furnish within 5 days after demand by the owner a statement of the amount of work and materials furnished to date of statement, and those unpaid as nearly as can be ascertained, under penalty of forfeiture of his lien.    Even though the owner is not shown to have been prejudiced, failure to furnish such statement within 5 days after demand is held to work a forfeiture.    *Frolich* v. *Beecher,* 139 Mich. 278. Neither does the fact that all material and labor has been paid for excuse.    *Sterner* v. *Haas,* 108 Mich. 488.

"It is not in compliance with the statute and of no benefit to the owner for the lienor to serve a mere reiteration of the sum claimed to be due in the statement of lien on file."    *William Monroe Co.* v. *Scherer,* 215 Mich. 26.

While this court has somewhat relaxed former rules of strict construction in application of the act after a lien is established, it has always been insistent that in creating a lien the plain requirements of the law must be strictly observed.    *Burman* v. *Ewald,* 192 Mich. 293.

Those requirements not having been complied with in this case the chancery court acquired no jurisdiction, and both bill and cross-bill are dismissed, with costs to defendants.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.